```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  10/20/22
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

STEPHEN JOSEPH FANTOZZI,                          :
                                                  :
                                   Plaintiff,     :
                                                  :
                  -against-                       :
                                                  :
CITY OF NEW YORK, et al.,                         :
                                                  :
                                   Defendants.    :
------------------------------------------------------------ X

1:21-cv-4439-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, District Judge:

## I.    INTRODUCTION

A party's failure to comply with procedural rules has consequences.  Regardless of the

substantive allegations made in a case, anyone seeking to bring and maintain a lawsuit in federal

court must comply with a host of technical requirements.  Sometimes, these rules are complex or

difficult to parse even for the most sophisticated of counsel.  Sometimes, they are relatively simple—

like the process to serve an individual whose known place of business is in New York City.  Plaintiff

Stephen Joseph Fantozzi brought an action against the City of New York, Officer Anthony P.

Sclafani, Officer Angel L. Figueroa, Jr., and New York Police Department Officers John and Jane

Does 1–10 containing various claims alleging police misconduct.  Because Plaintiff's counsel failed

to effectively serve process on the individual defendants within the time period required by the rules

without good reason, Plaintiff's claims against them must be dismissed.  And because Plaintiff

abandoned his other claims by failing to address arguments about them made in Defendants' motion

to dismiss, Defendants' motion to dismiss is GRANTED.

II.     BACKGROUND

A. Facts[1]

In May 2018, Plaintiff was seated on a bench at 50 Battery Place in Manhattan.  Dkt. No. 1 ("Compl.") ¶¶ 14–15.  A uniformed NYPD police officer and Officer Sclafani shouted Plaintiff's name, told him to "stand up and turn around," and then aggressively grabbed and restrained him. *Id.* ¶¶ 15–17.  Sclafani repeatedly kicked Plaintiff's leg, then pulled his leg out from under him and shoved him to the ground.  *Id.* ¶¶ 18–19.  Then, Sclafani stomped on Plaintiff's lower back and right hand, which caused Plaintiff severe pain and exacerbated Plaintiff's existing back injury.  *Id.* ¶¶ 20–22.  The officers handcuffed Plaintiff.  *Id.* ¶ 23.  They ignored Plaintiff when he told the officers that the handcuffs were too tight, *id.* ¶ 24, and Plaintiff later developed "handcuff neuropathy" in his right hand, *id.* ¶ 23.  While still on the ground, Plaintiff told Sclafani that he had injuries in both his shoulders and begged him not to pull him up by his arms.  *Id.* ¶ 26.  But Sclafani ignored Plaintiff's plea and pulled him up by the handcuffs, which caused Plaintiff extreme pain and exacerbated his preexisting shoulder injuries.  *Id.* ¶¶ 26–27.  The other officers at the scene, including Officer Figueroa, Jr., never intervened.  *Id.*  ¶¶ 28–31.

Plaintiff was put into an ambulance.  *Id.* ¶ 25.  The ambulance took Plaintiff to Mount Sinai Beth Israel Hospital, where he received treatment for the injuries he sustained from this attack.  *Id.* ¶ 32.  Plaintiff's injuries from the arrest are ongoing and permanent.  *Id.* ¶ 33.  Despite his arrest and alleged mistreatment, no charges were ever brought against him.  *Id.* ¶ 34.

---

[1] Unless otherwise noted, the facts are taken from the complaint, and are accepted as true for the purposes of this Rule 12(b)(6) motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Procedural History

Plaintiff commenced this case on May 18, 2021, naming the City of New York, and Officers Anthony P. Sclafani, Angel L. Figueroa Jr., and John and Jane Does 1–10. *See generally* Compl. His complaint lays out counts under 42 U.S.C. § 1983 for (1) false arrest against all Defendant Officers, (2) excessive force against Defendant Sclafani (or, alternatively, against Defendant John Doe 1), (3) failure to intervene against Defendant Figueroa, Jr. and Defendants NYPD Police Officers John and Jane Does 1–10, and (4) municipal liability against Defendant City of New York. *Id.* ¶¶ 35–71.

Plaintiff's counsel, Joseph M. Stancati, served Defendant City of New York on June 22, 2021. Dkt. No. 10. On August 16, 2021, the 90-day window to serve Defendants in this action expired. *See* Fed. R. Civ. P. 4(m). Defendants' answer to the complaint—filed October 25, 2021— then informed Plaintiff that Defendants Sclafani and Figueroa, Jr. had not yet been served. Dkt. No. 13 at 1 n.1. Over four months later, nearly seven months past the expiration of Plaintiff's window for service, and almost ten months after the filing of the case, Sclafani was finally served by delivery of summons to an authorized officer at Sclafani's place of business on March 9, 2022. Dkt. No. 22. Even later, on March 17, 2022, Figueroa, Jr. was served by delivery of a summons to an authorized person at Figueroa, Jr.'s place of business. Dkt. No. 23.

On June 1, 2022, the Defendant Officers and the City of New York filed a motion, and accompanying memorandum of law, to dismiss the complaint under Federal Rules of Civil Procedure 4(m), 12(b)(2), 12(b)(5), and 12(c). Dkt. Nos. 29 ("Mot. to Dismiss"), 30 ("Def's Mem."). Defendants argued that Plaintiff's claims against Sclafani and Figueroa, Jr. should be dismissed because they had not been timely served, and no extension of the time to effectuate service was warranted on the facts of the case. Def's Mem. at 5–12. Defendants also argued that Plaintiff's claims against the John and Jane Doe defendants should be dismissed because the statute of limitations had run on those claims, and that Plaintiff's municipal liability claim against the City of

New York should be dismissed for failure to state a claim upon which relief could be granted. *Id.* at 12–16. Plaintiff filed a memorandum of law in Opposition on June 28, 2022. Dkt. No. 31 ("Pl's Opp'n"). That Opposition responded only to Defendants' arguments concerning the service of process issue. *See generally id.* In their July 8, 2022 Reply, Defendants renewed their argument that Plaintiff's claims against Sclafani and Figueroa, Jr. should be dismissed for failure to timely serve process. Dkt. No. 33 ("Reply") at 2–6. And they argued that because Plaintiff had failed to respond in his Opposition to Defendant's arguments concerning the John and Jane Doe Defendants and the City of New York, Plaintiff's claims against those defendants should be deemed abandoned and dismissed on that basis as well. *Id.* at 6–7.

## III. LEGAL STANDARDS

### A. Rules 12(c) and 12(b)(6)

In deciding Rule 12(c) motions for judgment on the pleadings, courts employ "the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (internal citation omitted). And under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110–11 (2d Cir. 2010). To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action, devoid of supporting facts, does not suffice. *Id.* To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The

court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss or for judgment on the pleadings, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). In that context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

**B.  Rules 12(b)(5) and 12(b)(2)**

Under Rule 12(b)(5), a party may move for dismissal of a complaint based on the inadequate service of process. Fed. R. Civ. P. 12(b)(5). "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a Court must look[ ] to matters outside the complaint to determine

whether it has jurisdiction." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016) (citing *Darden v. Daimler-Chrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002)). "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indus. Co.*, No. 13-cv-7639, 2016 WL 3926449, at *2 (S.D.N.Y. July 15, 2016); *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order). "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010).

While Rules 12(b)(5) and 12(b)(2) are independent bases upon which dismissal may be granted, when service of process is at issue, they are "closely interrelated." 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2022). That is because "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Chen v. Best Miyako Sushi Corp.*, No. 16-cv-2012, 2021 WL 707273, at *8 (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)), *report and recommendation adopted*, 2021 WL 706412 (S.D.N.Y. 2021). So insufficient service can subject a complaint to dismissal under both rules. *See, e.g.*, *George v. N.Y.C. Health & Hosps. Corp.*, No. 09-cv-3833, 2012 WL 1072274, at *3 (E.D.N.Y. Mar. 29, 2012) (dismissing a complaint "pursuant to Rules 12(b)(2) and 12(b)(5) for failure to establish personal jurisdiction due to insufficient service of process").

### C.  Rule 4(m)

Rule 4 (m) of the Federal Rules of Civil Procedure states:

If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  A court must grant an extension for proper service "if the plaintiff shows good cause for the failure." *Id.*  "To establish good cause, 'a plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control.'" *Deptula v. Rosen*, 558 F. Supp. 3d 73, 85 (S.D.N.Y. 2021) (quoting *Spinale v. United States*, No. 03-cv-1704, 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005) *aff'd*, 352 F. App'x 599 (2d Cir. 2009)).  "Factors deemed outside of the plaintiff's control typically include sudden illness, natural catastrophe or evasion of service of process.  In determining whether good cause exists, district courts must consider (1) the reasonableness and diligence of Plaintiff's efforts to serve, and (2) the prejudice to the Moving Defendants from the delay." *Trs. of the United Plant & Prod. Workers Local 175 Benefits Fund v. Mana Constr. Grp.*, No. 18-cv-4269, 2021 WL 4150803, at *3 (E.D.N.Y. July 30, 2021) (internal citations omitted).  And "good cause does not exist where the plaintiff, upon learning that a defendant was not properly served, fails either to serve that defendant again within the time remaining under Rule 4(m) or to seek additional time within which to do so." *Deptula*, 558 F. Supp. 3d at 85 (citing *Reed Holdings Inc. v. O.P.C. Corp.*, 122 F.R.D. 441, 444-45 (S.D.N.Y. 1988)).  "The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant." *Id.* (quoting *George v. Pro. Disposables Intl., Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016)).

District courts retain discretion to grant extensions of time even absent good cause shown. But while "a district court *may* grant an extension in the absence of good cause . . . it is not required to do so." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007).  "To obtain a discretionary extension absent a showing of good cause, 'the plaintiff must ordinarily advance some colorable excuse for neglect.'" *Cassano*, 186 F. Supp. 3d at 323 (quoting *Zapata*, 502 F.3d at 198).  If such an excuse is advanced, courts also typically consider: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the

complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Sauer v. Town of Cornwall*, No. 20-cv-4881, 2021 WL 4066848, at *4 (S.D.N.Y. Sept. 7, 2021). Some courts have noted that the "balance of hardships" must "clearly favor the Plaintiff" in order to justify a discretionary extension of service. *Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 404 (S.D.N.Y. 2020) (quoting *Barbosa v. City of New York*, No. 16-cv-7340, 2018 WL 4625620, at *3 (S.D.N.Y. Sept. 26, 2018)).

## IV.   DISCUSSION

### A.  Failure to Timely Serve Defendants Sclafani and Figueroa, Jr.

Plaintiff's counsel did not timely serve Defendants Sclafani and Figueroa, Jr.  There was no good cause for the failure to effectuate timely service, and no discretionary extension of service time is warranted.  So Plaintiff's claims against those defendants will be dismissed.

#### i.  Failure to Serve Within 90 Days

Plaintiff's counsel failed to timely serve Defendants Sclafani and Figueroa, Jr.  Defendants must be served with a summons and complaint "within 90 days after the complaint is filed."  Fed. R. Civ. P. 4(m).  Plaintiff's complaint was filed on May 18, 2021.  Dkt. No. 1.  The final day to effectuate timely service in this case was therefore August 16, 2021.  But Defendant Sclafani was not served until March 9, 2022.  Dkt. No. 22.  And Defendant Figueroa, Jr. was not served until March 17, 2022.  Dkt. No. 23.  Accordingly, Plaintiff's counsel did not timely serve those defendants.

#### ii.  Good Cause

Because Plaintiff's counsel has not shown good cause regarding his failure to effectuate timely service, this Court need not grant an extension in accordance with Rule 4(m).

Plaintiff's counsel did not engage in diligent attempts to serve Defendants Sclafani and Figueroa, Jr.  Good cause for failure to serve can be established where a plaintiff's counsel

"demonstrate[s] that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control." *Deptula*, 558 F. Supp. 3d at 85 (S.D.N.Y. 2021) (quoting *Spinale*, 2005 WL 659150, at *3). In assessing whether diligent attempts were made to effect service, courts consider both any attempts made and "whether plaintiff moved under FRCP 6(b) for an extension of time in which to serve the defendant." *AIG Managed Mkt. Neutral Fund v. Askin Cap. Mgmt., L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000) (internal quotation omitted).

Plaintiff's counsel, Mr. Stancati, does not point to any attempts to serve Sclafani or Figueroa, Jr. before delayed service was made in March 2022. Nor did he ever move for an extension of time—either during or after the 90-day service window—in which to serve those Defendants, despite being notified in October 2021 that they had not yet been served. *See* Dkt. No. 13 at 1 n.1.

The sole justification presented by Mr. Stancati for his failure to serve the defendants timely is that it was "financially impracticable" for him to do so. Affirmation of Joseph M. Stancati, Esq. ("Stancati Aff."), Dkt. No. 32 ¶ 7. In Mr. Stancati's affidavit explaining why he failed to serve two of the three named defendants timely, he explains that in 2017, he founded his own civil rights firm. *Id.* ¶ 1. Mr. Stancati asserts that from November 2017 through the inception of the pandemic, "additional to my own practice, I made per diem appearances for other attorneys the majority of weekdays." *Id.* ¶ 2. That work was "essential" to Mr. Stancati's ability to continue to operate his law firm. *Id.* ¶ 3. The work dried up at the start of the pandemic and remained, for him, "virtually non-existent throughout the year 2020." *Id.* ¶ 4.

"In the second half of 2021, experiencing significant financial strain, I sought 'legal funding' to enable [me] to continue litigating my extant cases." *Id.* ¶ 5. Mr. Stancati asserts that he reached an agreement with a company to provide funding for his cases, but his affidavit fails to specify when. *Id.* ¶ 6. Mr. Stancati received his first "legal funding" from the company on March 4, 2022. *Id.* And, Mr. Stancati asserts, on "March 7, 2022 I arranged for a process server to effect service of

same on" Sclafani and Figueroa, Jr.  *Id.* ¶ 8.  "Prior to receiving said funds, it was financially impracticable for me [to] arrange for service of summonses and the Complaint upon Defendants Anthony P. Sclafani and Angel L. Figueroa, Jr."  *Id.* ¶ 7.

The facts presented by Mr. Stancati's declaration are best examined in relation to some of the key dates in this case.  The complaint was filed on May 18, 2021—14 months after the outset of the COVID-19 pandemic, when Mr. Stancati asserts his per diem practice dried up.  Dkt. No. 1.  Plaintiff requested the issuance of summonses for all of the defendants the same day.  On June 22, 2021, Plaintiff effectuated service on the City of New York.  Dkt. No. 10.  The following information appears on the bottom of the affidavit of service:  "ABC Process Serving Bureau Inc., 225 Broadway, Suite 3110, New York, NY 10007."  *Id.*

These facts expose several significant gaps in Mr. Stancati's affidavit.  That document does not explain why he took on the case in the midst of the pandemic if he knew of his asserted financial difficulties and that he would be unable to effectuate service.  It does not state whether he asked his client or any other resource for funds to pay for service.  It does not explain why he did not seek leave for Plaintiff to proceed in the case *in forma pauperis*, which, if available, would have imposed the cost of effectuating service on the Court.  Neither does it explain why he was able to pay for service on one defendant, the City of New York, while asserting that service on the others was "financially impracticable."[2]  It does not state when he entered into his agreement with a funding source.  And it does not state what "financially impracticable" means.

---

[2] The following fact plays no role in the Court's decision in this case.  However, the reader may not have a sense of the amount of money Plaintiff asserts to have been "impracticable" to obtain in order to serve the two individual defendants.  Therefore, only to provide that context, the Court notes that as of October 15, 2022, ABC Legal Services advertised the cost of "standard" service in New York State at $75 for a package including "4-6 service attempts . . . [o]utstanding online and live phone support . . . [and] Photo & GPS data on every attempt."  https://www.abclegal.com/states/new-york (last visited October 15, 2022).  Standard service on two individuals at this rate would cost $150.

Fundamentally, Mr. Stancati's explanations for his failure to effectuate service timely do not support a finding of good cause for an extension of his deadline to serve.  Extraordinary financial difficulties can certainly constitute good cause for failure to timely serve process.  *See, e.g.*, *McAteer v. Lexington-Fayette Urban Cnty. Gov't*, No. 20-cv-341, 2021 WL 624741, at *4 (E.D. Ky. Feb. 17, 2021) (finding that a *pro se* plaintiff who was in and out of housing and temporarily homeless during the prescribed service period had good cause for failure to timely serve process).  Plaintiff's account of the reasons for his delay in serving the individual defendants does not reveal exceptional circumstances beyond his control.  Accepting his narrative as true, counsel for Plaintiff made a knowing choice to file this case long after the outset of the COVID-19 pandemic that he says caused the difficulties that he asserts prevented him from effectuating timely service.

And the affidavit does not provide information that would permit the Court to find that he had acted diligently.  Mr. Stancati explains one effort to obtain financing.  That was an effort to obtain financing for his "extant cases."  Stancati Aff. ¶ 5.  The affidavit describes one effort to do that work that lasted months.  It does not provide sufficient detail for the Court to conclude that those efforts were diligent.  And, importantly, for this case to go forward, Mr. Stancati did not need to find funding for all his "extant cases."  He needed to find just enough money to serve two people.  Mr. Stancati does not describe any attempt to solve that much simpler, smaller problem—which is the only problem at issue here.

And the choice of words in Mr. Stancati's affidavit is telling—he says that it was "financially impracticable" for him to effectuate service earlier, not that it was impossible for him to do so.  He fails in his affidavit to explain why it was not similarly impracticable to serve the City of New York timely.  And he fails to provide sufficient detail regarding the financial condition of Plaintiff and his counsel for the Court to conclude that, like the homeless plaintiff in *McAteer*, they suffered from the

kind of serious economic want that might be credited as having impeded their ability to effectuate service timely.

Some disruptions caused by the COVID-19 pandemic have been found to constitute good cause for an extension of the deadline to serve process. *Compare Esqueda v. NYU Langone Hosps.*, No. 20-cv-6697, 2021 WL 4340731, at *2 (S.D.N.Y. Sept. 23, 2021) (denying good cause extension where counsel invoked COVID-19 as a justification for delayed service but did not effectively explain "how the pandemic disabled him from effecting service, having process issued, or hiring a process server"), *with Doe v. Pennsylvania*, 582 F. Supp. 3d 206, 212 (M.D. Pa. 2022) (finding good cause where counsel attempted to serve defendants multiple times but failed due to COVID-19 related obstacles). But here, Mr. Stancati does not cite any COVID-related reasons for failure to serve besides the financial difficulties that arose during the pandemic—which, as just explained, are insufficient to demonstrate good cause.

Mr. Stancati's explanation that timely service on Defendants Sclafani and Figueroa, Jr. was "financially impracticable" does not support a finding of good cause in this case. He has not shown that he acted diligently. Nor has he shown that he was unable to effectuate service timely as the result of exceptional circumstances beyond his control. Therefore, the Court is not required to extend the deadline for the service of process in accordance with Rule 4(m)'s good cause provision.

### iii. Discretionary Extension of Time

As Plaintiff has not demonstrated diligent efforts to comply with the service deadline, the Court declines to exercise its discretion to grant an extension of the time to effectuate service in the absence of good cause shown.

Plaintiff is not entitled to a discretionary extension of time for service primarily because his counsel's affirmation does not adequately justify his neglect of service. "To obtain a discretionary extension absent a showing of good cause, 'the plaintiff must ordinarily advance some colorable

excuse for neglect.'" *Cassano*, 186 F. Supp. 3d at 323 (quoting *Zapata*, 502 F.3d at 198).  But as discussed in the good-cause section above, the justification for Plaintiff's failure to serve is poor. That Mr. Stancati knew, or should have known, when he accepted this case that it was "impracticable" for him to effectuate timely service is incompatible with finding that he has advanced any colorable excuse for his neglect.  It is also concerning that Mr. Stancati never notified Defendants that his financial difficulties would prevent him from serving process.  This remained so even after Defendants' October 25, 2021 answer stated—and Mr. Stancati was accordingly put on notice—that Sclafani and Figueroa, Jr. had yet to be served.  Dkt. No. 13 at 1 n.1.  If Mr. Stancati was financially unable to serve process on any Defendants, he should have at the very least brought that problem to the attention of Defendants and the Court.  *See Sauer*, 2021 WL 4066848, at *4 (excusing untimely service in part because "Plaintiff engaged in diligent efforts to obtain a waiver of service").  Having failed to do so, the Court does not find that Plaintiff has demonstrated a colorable excuse for his neglect of timely service.

Even had he advanced such a colorable excuse, moreover, it is far from clear that an extension of service time would be warranted.  It is true that the first non-excuse factor considered in determining whether such an extension is warranted—whether the applicable statute of limitations has run—cuts in Plaintiff's favor.  "[C]ourts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis" because dismissal in such "circumstances would extinguish potentially meritorious claims without there being an opportunity to have them adjudicated on the merits."  *Sauer*, 2021 WL 4066848, at *4 (quoting *Songhorian v. Lee*, No. 11-cv-36, 2012 WL 6043283, at *4 (S.D.N.Y. Dec. 3, 2012)).  And it is undisputed that the applicable statute of limitations here would bar Plaintiff from refiling his case against Defendants Sclafani, Figueroa, Jr., and the John and Jane Doe Defendants.

*See* Pl's Opp'n at 3 ("[A] dismissal of this action would time-bar all of Plaintiff's claims."); Reply at 5 ("The statute of limitations for plaintiff's claims in this case ran on May 18, 2021 . . . .").[3]

"[T]he fact that dismissal will impact the statute of limitations," however, "does not compel the court to excuse the violation." *Kogan*, 334 F.R.D. at 404 (quoting *Knorr v. Coughlin*, 159 F.R.D. 5, 7 (N.D.N.Y. 1994)); *see also Harmon v. Bogart*, 788 F. App'x 808, 810 (2d Cir. 2019) (summary order) (that the statute of limitations has run on a plaintiff's underlying claims "does not always warrant a discretionary extension" of service requirements); *Knorr*, 159 F.R.D. at 7 ("[T]hough leniency may sometimes be appropriate for those who have in good faith attempted timely service, to afford it to litigants who have failed to make even the most basic efforts would turn Rule 4(m) into a toothless tiger." (quoting *Nat'l Union Fire Ins. Co. v. Sun*, No. 93-cv-7170, 1994 WL 463009, at *4 (S.D.N.Y. Aug. 25, 1994))).  In deciding how much weight to give to a lapsed statute of limitations, important considerations are "whether the plaintiff had been aware of the [service] deadline and the extent of the plaintiff's efforts to meet it." *Kogan*, 334 F.R.D. at 404.  Here, Plaintiff does not allege he was unaware of the service deadline.  And as discussed above, he made no efforts either to meet that deadline or to seek an extension or waiver of the deadline, even after Defendants raised the service issue in their October 25, 2021 answer.  Accordingly, the fact that dismissal will impact the statute of limitations is insufficient, on its own, to justify an extension of the service deadline.

The second factor—whether Sclafani and Figueroa, Jr. may have had actual notice of the claims asserted in the Complaint—also appears to favor Plaintiff.  "Actual notice of an action militates against a finding of prejudice since the 'core function' of service is to supply notice 'in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections.'" *In re Teligent Servs., Inc.*, 324 B.R. 467, 474 (S.D.N.Y. 2005)

---

[3] For the reasons given in Part V of this opinion, the Court is unsure that Plaintiff's municipal liability claim would necessarily be time-barred if refiled.

(quoting *AIG Managed Mkt.*, 197 F.R.D. at 111). And even without "competent evidence to support a conclusion that any . . . unserved Defendants had actual notice of the claims against them," where defense counsel has "engaged in motion practice on their behalf," the Court can assume that those defendants have actual notice of the claims in the Complaint. *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 421 (S.D.N.Y. 2013). Here, the same counsel representing Defendant City of New York is representing Defendants Sclafani and Figueroa, Jr., and has filed motions on their behalf. And as Plaintiff notes, Defendants do not deny that Sclafani and Figueroa, Jr. had actual notice of this action before they were served. Pl's Opp'n at 3; *see* Def's Mem at 8–9; Reply at 4. So the Court assumes, *arguendo*, that the Defendants had actual notice of the claims against them in Plaintiff's Complaint.

Even so, that notice—like the running of the statute of limitations—does not necessarily justify an extension of the service deadlines. Many "courts, balancing equitable factors, have declined to extend service deadlines where" defendants had actual notice of a complaint, but "the plaintiff made no effort to achieve service, the resulting delay was lengthy, or plaintiffs failed to present a justifiable excuse for failing to effect service." *Kogan*, 334 F.R.D. at 406 (citing *Martinez v. SEIU Local 32BJ*, No. 18-cv-3961, 2019 WL 1259381, at *2 (S.D.N.Y. Mar. 19, 2019); *Brunson-Bedi v. New York*, No. 15-cv-9790, 2018 WL 2084171, at *9; *Cassano*, 186 F. Supp. 3d at 323–24; *Vaher*, 916 F. Supp. 2d at 421–22; *Gibbs v. Imagimed, LLC*, No. 11-cv-2949, 2013 WL 2372265, at *4 (S.D.N.Y. May 30, 2013). Plaintiff's counsel here made no effort to achieve service (or to seek an extension or waiver) until 205 days after the service deadline for Sclafani, and 213 days after the deadline for Figueroa, Jr. And as detailed above, the Court does not find his excuse for failing to serve convincing. This factor is therefore non-dispositive as to whether a discretionary extension of time is warranted.

Because Defendants did not attempt to conceal the defect in service, the third factor cuts against granting an extension. While it is generally "the responsibility of his attorney—and not the Court or Defendants—to ensure that all Defendants [are] properly served with [a] . . . Complaint in a timely manner," courts will more readily excuse a failure of service if a defendant has concealed the plaintiff's error. *Vaher*, 916 F. Supp. 2d at 420. Here, however, Plaintiff's counsel concedes that "Defendants did not conceal the fact that Defendants Sclafani and Figueroa, Jr., had not been served prior to March 9, 2022 and March 17, 2022, respectively." Pl's Opp'n at 3. Indeed, after Defendants notified Plaintiff that Sclafani and Figueroa had not been served in their October 25, 2021 answer, *see* Dkt. No. 13 at n.1, Plaintiff's counsel still failed serve Sclafani for another 135 days, and failed to serve Figueroa, Jr. for another 143 days, *see* Dkt. Nos. 22–23. Where, as here, "there has been no showing that Defendants attempted to conceal the defect in service," an extension of time for service is less likely to be warranted. *George*, 221 F. Supp. 3d at 436 (internal quotation omitted).

Finally, Defendants would be prejudiced if the Court provided Plaintiff extended time for service. While Plaintiff would certainly be prejudiced if he were unable to refile time-barred claims, "extending the service period beyond the statute of limitations period for the action imposes a corresponding prejudice on defendants, especially where, as here, both the service period and the statute of limitations period have long since expired." *Vaher*, 916 F. Supp. 2d at 421; *see also Cassano*, 186 F. Supp. 3d at 323 (explaining that, where dismissal would prejudice some of a plaintiff's claims due to applicable statutes of limitations, that fact "cuts both ways"). Plaintiff argues that Defendants would suffer only "de minimis" prejudice from an extension because the parties are in the same overall position as they would be had Sclafani and Figueroa, Jr. been served. Pl's Opp'n at 3–4. But there is a meaningful distinction for Messrs. Sclafani and Figueroa Jr. if they are merely witnesses in the case, as opposed to being defendants, even if, as Plaintiff's argument assumes, they

are ultimately indemnified by the City of New York for their conduct. And there is no assurance that they will be indemnified.

Moreover, extending Plaintiff's deadline for service would mean that Defendants "would be obliged to spend time, money, and resources litigating apparently time-barred claims." *Kogan*, 334 F.R.D. at 406. The complaint was filed on the final day allowable under the relevant statutes of limitations. *See* Compl. ¶ 14 (the incident giving rise to this case occurred on May 18, 2018); Dkt. No. 1 (complaint filed on May 18, 2021); *Lefebvre v. Morgan*, 234 F. Supp. 3d 445, 458 (S.D.N.Y. 2017) (statute of limitations for § 1983 claims in New York is three years). So by belatedly serving Sclafani and Figueroa, Jr., Plaintiff's counsel extended the time that the Defendants would have to collect evidence regarding the events of May 2018 far beyond the maximum time allowable by the statute of limitations acting in combination with Rule 4(m), with all of the associated challenges of fading memories and difficulties in the collection of aging documents. Permitting this extension would therefore work a significant—not merely *de minimis*—hardship on the individual defendants. *See Roeder v. J.P. Morgan Chase & Co*, 523 F. Supp. 3d 601, 611 (S.D.N.Y. 2021) ("Where the legal rights of parties are involved, application of a statute of limitations 'promote[s] justice by preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" (quoting *R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944))).

Accordingly, the first two factors favor Plaintiff, while the second two favor Defendants. But however those factors might balance out in the abstract, here, they must be viewed in the context of Mr. Stancati's abject failure to justify adequately his untimely service on Sclafani and Figueroa, Jr. *See Kogan*, 334 F.R.D. at 393 ("[E]ven if the balance of hardships favors the plaintiff a district court may still decline to excuse a failure to timely serve the summons and complaint where the plaintiff fails to advance some colorable excuse for neglect." (quoting *Vaher*, 916 F. Supp. 2d at

421)).  And because "there is simply no acceptable explanation for [Plaintiff's counsel's] failure to

even attempt to serve the Moving Defendants within the appropriate time period under Rule 4(m),

or request an extension to do so," Plaintiff's request for an extension under Rule 4(m) is denied, and

the claims against Sclafani and Figueroa, Jr. are dismissed.  *George*, 221 F. Supp. 3d at 437 (internal

quotation omitted); *see also Cassano*, 186 F. Supp. 3d at 324 (finding "that even in light of the possible

prejudice to Plaintiffs, the length of their delay and their lack of a justifiable excuse for failing to

properly serve Defendants warrant[ed] dismissal of the Amended Complaint").

### B.  Claims Against John and Jane Doe Officers

In addition to Officers Sclafani and Figueroa, Plaintiff brought claims of false arrest,

excessive force, and failure to intervene against ten unnamed officers.  Compl. ¶¶ 35–59.  However,

because Plaintiff never responded to Defendants' arguments concerning dismissal of those claims as

to the John and Jane Doe Defendants, they were abandoned and will be dismissed.

"Courts 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to

a defendant's arguments that the claim should be dismissed.'" *Felix v. City of New York*, 344 F. Supp.

3d 644, 654 (S.D.N.Y. 2018) (quoting *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643 (S.D.N.Y.

2008)); *see also, e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-cv-442, 2014 WL

4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . a plaintiff abandons a

claim by failing to address the defendant's arguments in support of dismissing that claim." (citation

omitted)); *Bonilla v. Smithfield Assocs. LLC*, No. 09-cv-1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec.

4, 2009) (dismissing claims "as a matter of law" as "effectively abandoned" where defendant had

raised three arguments for dismissal and plaintiff responded to only one in his opposition papers).

Especially "in the case of a counseled party," "a court may . . . infer from a party's partial opposition

that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Express*,

766 F.3d 189, 198 (2d Cir. 2014).

In their motion to dismiss, Defendants argued that the claims against unnamed defendants should be dismissed because the three-year statute of limitation has expired for those claims, Plaintiff had failed to add the names of those Defendants in a timely manner, and the John Doe pleadings could not circumvent the bar imposed by the statute of limitations.  Def's Mem. at 12 (citing *Tapia-Ortiz v. Doe*, 141 F.3d 150, 151–52 (2d Cir. 1999)).  Plaintiff failed to address any of these arguments.  Indeed, his Opposition failed to even include a section where such arguments would be housed.  And this concession-by-abandonment makes sense:  As explained by Defendants (and in Part V of this opinion), substituting the John and Jane Doe defendants for Sclafani and Figueroa, Jr. would not be possible given the failure of Plaintiff's counsel to timely serve the named officers and the rule that John Doe pleadings cannot be used to circumvent statutes of limitations. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("John Doe pleadings cannot be used to circumvent statutes of limitations because replacing a John Doe with a named party in effect constitutes a change in the party sued." (internal citation omitted)).  Accordingly, these claims are deemed abandoned and are therefore dismissed.  *See Jackson*, 766 F.3d at 198; *Felix*, 344 F. Supp. 3d at 654; *Romeo & Juliette*, 2014 WL 4723299, at *7; *Bonilla*, 2009 WL 4457304, at *4.

### C.  Municipal Liability Claim

Finally, Plaintiff brings a municipal liability claim against the City of New York.  Compl. ¶¶ 60–71.  Because that claim does not plausibly allege facts necessary to sustain it, and because the claim was abandoned, it will be dismissed also.

Under 42 U.S.C. § 1983, municipalities are "not vicariously liable . . . for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Plaintiffs seeking to hold a municipality liable under § 1983 must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y.

2013) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).

Plaintiff's complaint does not adequately plead these elements.  Rather, as Defendants note, it merely asserts that the alleged acts by the individual Defendants were committed "'pursuant to the customs, policies, usages, practices, procedures, and rules of the Defendant City and the NYPD' and [that] 'said customs, policies, usages, practice, procedure, and rules of Defendant City and the NYPD include flagrant disregard for the rights of citizens to be free from false arrest not based upon probable cause, and from the use of wantonly brutal excessive force against them.'"  Def's Mem. at 14–15 (quoting Compl. ¶¶ 63–64).  These boilerplate, conclusory allegations, without any factual enhancement, do not satisfy the standard for pleading a municipal liability claim.  *See, e.g.*, *Cuevas v. City of New York*, No. 07-cv-4169, 2009 WL 4773033, at *3 ("Plaintiff's boilerplate allegations against the City of New York satisfy neither the elements [for municipal liability], nor the pleading requirements set forth in *Iqbal*.").  And Plaintiff's counsel, moreover, seems to have recognized as much:  As with the claims against the John and Jane Doe Defendants, he does not respond to the Defendants' arguments concerning municipal liability, thereby abandoning the claim. *See generally* Pl's Opp'n.  Accordingly, because Plaintiff has not sufficiently alleged a municipal liability claim, and because he has abandoned that claim as pleaded, it will also be dismissed.

## V.    LEAVE TO AMEND

Under the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within 21 days of serving it or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).  After that point, absent written consent from the opposing party, leave to amend must be obtained from the district court.  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) provides that courts "should freely give leave when justice so

requires." "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (citation omitted).

Here, leave to amend the claims against Defendants Sclafani and Figueroa, Jr. would be futile because the three-year statute of limitations on those claims has run. *See, e.g.*, *Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 239 (E.D.N.Y. 2015) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations." (quoting *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000))); *Vargas v. Ciarletta,* No. 09-cv-8981, 2010 WL 4447636, at *1 (S.D.N.Y. Nov. 4, 2010) ("[I]f the claims the plaintiff seeks to add would be barred by the applicable statute of limitations, amendment would be futile and leave to amend should be denied."). Amending Plaintiff's claims against the John and Jane Doe Defendants would likewise be futile because, under binding precedent, Plaintiff cannot "circumvent statutes of limitations" that have run concerning named defendants—here, Sclafani and Figueroa, Jr.—by replacing them with previously anonymous defendants. *Hogan*, 738 F.3d at 517. Instead, the service issue that makes repleading the claims against Sclafani and Figueroa, Jr. futile also operates to bar the repleading of Plaintiff's John and Jane Doe claims.

The Court, however, will permit Plaintiff to replead his municipal liability claim against Defendant City of New York. While, as described above, Plaintiff's current allegations against the City do not make out a plausible *Monell* claim, the Court cannot conclude now that Plaintiff could not amend his pleadings to assert a colorable claim. *See Askins v. Doe No. 1*, 727 F.3d 248, 253–54 (2d Cir. 2013) (noting that plaintiffs may still pursue municipal liability claims, even when claims against individual defendants are dismissed, if the claims against individual defendants are dismissed for procedural reasons including "the fact that the suit against the [individual] actors was untimely, or that the plaintiff . . . abandoned the suit against them"). The Court is aware that Plaintiff's

counsel has conceded in his opposition papers that "a dismissal of this action would time-bar *all* of Plaintiff's claims." *See* Pl's Opp'n at 3 (emphasis added). However, the Court has not been asked to rule regarding whether Plaintiff's claims against the City of New York are time-barred. Therefore, the Court does not conclude on this record that an amendment of Plaintiff's claims against the City of New York would be futile on that basis.

## VI.     CONCLUSION

For the reasons outlined above, Defendants' motion to dismiss is GRANTED. Plaintiff's claims against Defendants Sclafani, Figueroa, Jr., and John and Jane Does are dismissed WITH PREJUDICE. Plaintiff's claim against the City of New York is dismissed WITHOUT PREJUDICE. Any amended complaint must be filed within fourteen days after the entry of this opinion.[4]

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 29.

SO ORDERED.

Dated:  October 20, 2022
New York, New York
_____
GREGORY N. WOODS
United States District Judge

---

[4] As noted at the outset of this opinion, there are rules in litigation, and consequences flow from parties' failure to follow them. As described above, failure by a lawyer to follow the rules does not always justify an exception from them. Parties are not necessarily left without a remedy when their lawyer fails to follow the rules: Where an attorney breaches "the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly exercise," and that breach damages an individual, that individual may bring a legal malpractice claim against his attorney. *Am. Med. Distribs. v. Macdonald Tuskey*, No. 16-cv-6016, 2018 WL 1478301, at *8 (S.D.N.Y. Mar. 23, 2018). The Court takes no position on whether Plaintiff's counsel's failure to effectuate timely service under these circumstances would constitute such a breach, or the merits of such a claim.