UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
STEPHEN JOSEPH FANTOZZI,

           Plaintiff,

   -against-

CITY OF NEW YORK,

           Defendant.
------------------------------------------------------------X

**AMENDED COMPLAINT**

Jury Trial Demanded

21-CV-4439 (GHW)

## INTRODUCTION

1. Plaintiff Stephen Joseph Fantozzi ("Plaintiff"), through his attorney, Joe Stancati, Esq., brings this action for compensatory damages, punitive damages and attorneys' fees for the wrongful and illegal acts of Defendant CITY OF NEW YORK ("DEFENDANT CITY"), in violation of Plaintiff's rights under the federal laws and Constitution of the United States of America.

## NATURE OF THE ACTION

2. This is an action to recover money damages on Plaintiff's behalf arising out of DEFENDANT CITY'S violation of Plaintiff's rights upheld by 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

## JURISDICTION AND VENUE

3. This action seeks redress for the violation of Plaintiff's constitutional and civil rights, pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth

Amendments to the Constitution of the United States of America.

4. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action.

## PARTIES

7. Plaintiff resides in the District of Columbia; all of the events pertinent to this action occurred in New York County in the City and State of New York.

8. DEFENDANT CITY is a municipal corporation organized under the laws of the State of New York. DEFENDANT CITY is authorized by law to maintain and operate the New York City Police Department ("NYPD"), an agency of DEFENDANT CITY in the area of law enforcement. DEFENDANT CITY is thereby responsible for the actions of the NYPD. The NYPD is responsible for the training, appointment, supervision, promotion and discipline of police officers and supervisory police officers such as detectives and investigators.

## SUBJECT INCIDENT FACTS

9. Plaintiff is 55 year-old man who lived in New York City on May 18, 2018.

10. At the time of this incident, Plaintiff had never been arrested or charged with any crime by police in any jurisdiction.

11. On May 18, 2018, at about 4:30 p.m., Plaintiff was lawfully present outside at or around 50 Battery Place in Manhattan.

12. As Plaintiff was seated on public bench at said location, a uniformed NYPD officer, Police Officer Anthony Sclafani (Shield # 24799, of the NYPD 1st Precinct) ("Officer Sclafani"), without provocation or any probable cause, shouted at Plaintiff as he approached Plaintiff, "Stephen Fantozzi! Stand up and turn around!"

13. Officer Sclafani then aggressively grabbed and restrained Plaintiff, again without any probable cause, privilege or consent.

14. Although Plaintiff did not in any way resist at any time, Officer Sclafani, attacking Plaintiff from behind, repeatedly "swipe-kicked" Plaintiff's left leg, and then hooked his left leg around Plaintiff's left leg.

15. Using his left leg Officer Sclafani pulled Plaintiff's left leg out from under him and stiff-arm shoved Plaintiff to the ground face-down.

16. Officer Sclafani stomped with great force on Plaintiff's lower back, causing Plaintiff to suffer severe pain and significantly exacerbating injuries that Plaintiff had previously suffered to his lower back.

17. Officer Sclafani extended Plaintiff's right arm and stomped with great force on Plaintiff's right hand.

18. Officer Sclafani's stomping on Plaintiff's right hand caused severe and permanent injury to it, and caused Plaintiff to lose function in that hand for several months after the attack.

19. While still on the ground Plaintiff was immediately handcuffed extremely excessively tightly, causing extreme pain and resulting in the injury of "handcuff neuropathy" in Plaintiff's right hand, an injury that continues to the present.

20. Although Plaintiff immediately told Officer Sclafani that said handcuffing

was causing him extreme pain, Officer Sclafani ignored Plaintiff's plea.

21. These handcuffs remained on while Plaintiff was placed in restraints in the back of an ambulance, and were loosened only after the ambulance was en route to Mount Sinai Morningside Hospital in Manhattan.

22. While still on the ground and handcuffed (before being taken into the ambulance), Plaintiff told Officer Sclafani that he had preexisting injuries to both of his shoulders, and begged him not to pull him up by his arms.

23. Brutally and wantonly ignoring this, Officer Sclafani pulled Plaintiff up from the ground by the handcuffs. This exacerbated said preexisting injuries to both shoulders, caused extreme pain, and caused internal bleeding in both shoulders.

24. A supervisory police officer of the NYPD – upon information and belief, 1st Precinct Commanding Officer Angel L. Figueroa, Jr. – was in the immediate vicinity of and observed all of the above-described false arrest and excessive use of force perpetrated by Officer Sclafani.

25. Said supervisory police officer did nothing to intervene to stop or in any way mitigate the injuries being inflicted upon Plaintiff by Officer Sclafani.

26. Upon information and belief, about ten additional NYPD officers were in the immediate vicinity of and observed all of the above-described false arrest and excessive use of force perpetrated by Officer Sclafani.

27. Upon information and belief, said additional NYPD officers did nothing to intervene to stop or in any way mitigate the injuries being inflicted upon Plaintiff by Officer Sclafani.

28. After being placed in restraints in the back of an ambulance, Plaintiff was

transported to Mount Sinai Morningside Hospital for treatment the myriad injuries he sustained in this brutal attack.

29. Said injuries are ongoing and permanent.

30. No charges of any kind were brought against Plaintiff.

**CONTEXTUAL FACTS**

31. On October 1, 2015, the New York City Department of Investigation Office of the Inspector General for the NYPD published a report regarding the use of force by NYPD officers (the "OIG Report").[1]

32. The OIG Report found that the NYPD had no definitions for the terms "force" or "excessive force" in its Patrol Guide. (See OIG Report at 3.)

33. From 2010 through 2014, there were over 10,000 complaints filed with the Civilian Complaint Review Board ("CCRB") alleging the use of excessive force by NYPD officers against civilians. (Id. at 2 n.1.)

34. Of the 207 "substantiated" force allegations during that time, the OIG independently investigated 104. (See id. at 2 n.1., 4.)

35. In 37 of those 104 cases (35.6%), the NYPD imposed no discipline whatsoever on the subject officer.

36. Moreover, in a distinct but related analysis, the OIG Report found that:

> "[a]cross 92 substantiated use-of-force allegations, NYPD *departed downward* from CCRB's disciplinary recommendations – *or imposed no disciplinary action* whatsoever – **67.4%** of the time."
> Id. at 4 (emphasis added).

---

[1] New York City Department of Investigation, Office of the Inspector General for the NYPD (OIG-NYPD), *Police Use of Force in New York City: Findings and Recommendations on NYPD's Policies and Practices* (2015), https://www.nyc.gov/html/oignypd/assets/downloads/pdf/oig_nypd_use_of_force_report_-_oct_1_2015.pdf.

37. On top of this disturbing tendency to shirk disciplining officers found guilty of using excessive force against civilians, the NYPD's policy and practices regarding officers' reporting of whether force was used in an encounter were found to be – at best – unreliable.

38. For example, of the aforementioned 207 substantiated force allegations, 108 involved incidents that resulted in an arrest. (Id. at 25.)

39. For half of those arrests, the officer completing the arrest report "affirmatively reported" that force was *not* used.

40. Usually, the officer who completed and signed that report was not the officer found guilty of using the excessive force. Sometimes the completing officer was not at the scene at all. (See id.)

41. Due to such basely capricious reporting standards by the NYPD, the OIG report concluded that it was "currently *impossible* to accurately and comprehensively track the use of force by NYPD officers." (See id. at 3.)

42. As of April of 2021, 494 substantiated force allegations had been found against individuals who remained active NYPD officers.[2]

43. Not completely incidentally, Officer Sclafani is one such (currently) active NYPD officer.[3]

44. From 2016 through 2020, 577 lawsuits were filed against NYPD officers for allegedly using excessive force against civilians.[4]

---

[2] *See generally* NYPD Misconduct Complaint Database, https://www.nyclu.org/en/campaigns/nypd-misconduct-database. Note that the more-current official CCRB database does not have the capability to provide such a figure.
[3] *See* https://www.nyc.gov/site/ccrb/policy/MOS-records.page (last checked November 3, 2022).
[4] New York City Law Department, *NYPD Alleged Misconduct Matters Commenced in CY 2016-2020*, https://www.nyc.gov/site/law/public-resources/nyc-administrative-code-7-114.page (see Excel file therein).

## FIRST CLAIM
### Municipal Liability under 42 U.S.C. § 1983 for Failure To Train.

45. Plaintiff repeats and re-alleges every allegation contained in the paragraphs above as if fully set forth herein.

46. DEFENDANT CITY systemically failed to train its police officers and supervisory police officers such as detectives and investigators to carry out their professional duties without using excessive force against civilians.

47. DEFENDANT CITY so failed through its customs, practices and procedures, which did not instruct said NYPD officers on the difference between the lawful and the excessive use of force.

48. These customs, practices and procedures were the result of DEFENDANT CITY'S deliberate indifference to the constitutional rights of civilians such as Plaintiff, including to the right to be free from subjection to the use of excessive force.

49. DEFENDANT CITY's systemic failure to train caused and was the moving force behind the use of excessive force against Plaintiff and the injuries he therefore suffered.

50. DEFENDANT CITY thereby deprived Plaintiff of the rights, privileges, and immunities guaranteed to him by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983.

51. DEFENDANT CITY therefore is liable for Plaintiff's injuries, in amounts to be determined at trial.

## SECOND CLAIM
**Municipal Liability under 42 U.S.C. § 1983 for Failure To Supervise or Discipline.**

52. Plaintiff repeats and re-alleges every allegation contained in the paragraphs above as if fully set forth herein.

53. There is a consistent and longstanding record of complaints by civilians regarding the use of excessive force by NYPD officers.

54. Said record comprises, *inter alia*, a disturbingly high volume of lawsuits against DEFENDANT CITY based on NYPD officers' use of excessive force, as well as the large number of CCRB complaints regarding same.

55. DEFENDANT CITY has failed to adequately supervise its police officers and supervisory police officers such as detectives and investigators regarding said officers' investigations of the use of excessive force by NYPD officers.

56. Said inadequate supervision, included, *inter alia*, failure to accurately report the occurrence and manner of NYPD officers' use of force civilian encounters.

57. Said failure by DEFENDANT CITY enabled constitutional violations such as the use of excessive force by NYPD officers, because they reasonably knew that it was unlikely they would be held accountable for such violations.

58. DEFENDANT CITY's failure to adequately supervise caused and was the moving force behind the use of excessive force against Plaintiff and the injuries he therefore suffered.

59. DEFENDANT CITY has failed to adequately discipline its police officers and supervisory police officers such as detectives and investigators for their proven offenses regarding using excessive force against civilians.

60. Said failure by DEFENDANT CITY enabled constitutional violations such

as the use of excessive force by NYPD officers, because they reasonably knew that it was unlikely they would face severe punishment even if they were proven to have illegally used excessive force against a civilian.

61. DEFENDANT CITY's failure to adequately discipline caused and was the moving force behind the use of excessive force against Plaintiff and the injuries he therefore suffered.

62. DEFENDANT CITY thereby deprived Plaintiff of the rights, privileges, and immunities guaranteed to him by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983.

63. DEFENDANT CITY therefore is liable for Plaintiff's injuries, in amounts to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment against DEFENDANT CITY as follows:

1. Compensatory damages against DEFENDANT CITY;

2. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

3. Such other and further relief as this Court deems just and proper.

Dated:     November 3, 2022
           New York, NY


                                        Respectfully,

                                        _____
                                        **Law Office of Joe Stancati**
                                        305 Broadway, FL 7
                                        New York, NY 10007
                                        212-858-9205
                                        joe@stancati-law-nyc.com

                                        *Attorney for Plaintiff*


**BY ECF:**

Inna Shapovalova
New York City Law Department
100 Church St.
New York, NY 10007
212-356-2656
inshapov@law.nyc.gov