UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
STEPHEN JOSEPH FANTOZZI,                             :
                                                                              :
                                           Plaintiff,         :
                                                                              :       1:21-cv-4439-GHW
                     -against-                                   :
                                                                              :       MEMORANDUM OPINION
CITY OF NEW YORK,                                            :                AND ORDER
                                                                              :
                                           Defendant.      :
------------------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

## I. INTRODUCTION

This opinion addresses a second motion to dismiss Plaintiff Stephen Fantozzi's complaint alleging that in May 2018, New York Police Department ("NYPD") officers brutally assaulted him while effectuating an arrest without probable cause. In the first opinion, the Court noted that because procedural rules have consequences, Plaintiff's failure to timely serve the individual officers required that they be dismissed from the case. And that opinion further detailed the factual inadequacy of Plaintiff's municipal-liability claim against Defendant City of New York, although it granted Plaintiff leave to amend that claim.

The City now moves to dismiss Plaintiff's amended complaint, arguing that it still fails to state a claim on which relief can be granted. Because Plaintiff's amended complaint does not contain sufficient allegations to give rise to a plausible inference that the NYPD's training, supervisory, or disciplinary procedures were so faulty that they represented an official policy or custom, the Court agrees. So Defendant's motion to dismiss is GRANTED.

## II.     BACKGROUND[1]

### A. Facts Concerning the Alleged Assault

On May 18, 2018, Plaintiff was seated on a bench at 50 Battery Place in Manhattan. Dkt. No. 36 ("Am. Compl.") ¶¶ 11–12. Without provocation or probable cause, Officer Anthony Sclafani approached him and shouted at Plaintiff to stand up and turn around. *Id.* ¶ 13. Sclafani repeatedly "swipe-kicked" Plaintiff's leg, then pulled Plaintiff's leg out from under him and shoved Plaintiff into the ground. *Id.* ¶¶ 14–15. Then, Sclafani stomped on Plaintiff's lower back and right hand, which caused severe injury to both body parts. *Id.* ¶¶ 16–18.

Sclafani then placed Plaintiff in tight handcuffs and ignored Plaintiff's plea to loosen them; Plaintiff would later experience "handcuff neuropathy" related to the handcuffing. *Id.* ¶¶ 19–20. While still on the ground and handcuffed, Plaintiff asked Sclafani not to pull him up by his arms because he had preexisting shoulder injuries. *Id.* ¶ 22. But Sclafani did so anyway, which exacerbated those injuries. *Id.* ¶ 23. A supervising officer, whom Plaintiff believes to be Officer Angel L. Figueroa, Jr., and ten other unnamed officers observed all of this but never intervened. *Id.* ¶¶ 24–27.

Plaintiff, with the handcuffs still on, was put into an ambulance. *Id.* ¶ 21, 28. The ambulance took him to Mount Sinai Morningside Hospital, where he received treatment for the injuries he sustained from this attack. *Id.* ¶ 28. Plaintiff's injuries from the arrest are ongoing and permanent. *Id.* ¶ 29. Despite his arrest and alleged mistreatment, no charges were ever brought against him. *Id.* ¶ 30.

---

[1] Unless otherwise noted, the facts are taken from the amended complaint, and are accepted as true for the purposes of this Rule 12(b)(6) motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B. Procedural History**

Plaintiff's original complaint, filed in May 2021, brought claims against Officers Sclafani and Figueroa, Jr., John and Jane Doe officers, and the City of New York. Dkt. No. 1. On June 1, 2022, the Defendants jointly moved to dismiss the complaint, Dkt. No. 29, and the Court granted the motion through an order and opinion issued on October 20, 2022. Dkt. No. 34. In that opinion, the Court dismissed Plaintiff's claims against the individual defendants—Sclafani, Figueroa, Jr., and the John and Jane Doe defendants—because Plaintiff's counsel had failed to serve those defendants, had additionally failed to show good cause for the failure, and because no discretionary extension of time was warranted on the facts presented to the Court. *Id.* at 8–19. The Court also dismissed Plaintiff's municipal liability claim against the City of New York as insufficiently pleaded and abandoned for the purposes of the motion. *Id.* at 19–20.

Considering whether Plaintiff should be granted leave to amend his complaint, the Court noted that any amendment with respect to the individual defendants would be futile because the statute of limitations had run on those claims. *Id.* at 21. So the Court denied leave to amend concerning the individual defendants, and dismissed those defendants from the case. *Id.* at 21–22. Because it was unclear from the complaint whether the statute of limitations would bar Plaintiff's municipal liability claim against the City of New York, however, the Court granted Plaintiff leave to replead that claim. *Id.* Plaintiff did so by filing an amended complaint on November 4, 2022. Dkt. No. 36 ("Am. Compl."). The City of New York, as the lone remaining Defendant, moved to dismiss that complaint under Federal Rule of Civil Procedure 12(b)(6) on December 29, 2022. Dkt. No. 43 (motion); Dkt. No. 44 (memorandum in support, or "Def's Mem."). That motion is fully briefed. Dkt. No. 48 (Plaintiff's opposition, or "Pl's Opp."); Dkt. No. 49 (Defendant's reply, or "Reply").

### C. Contextual Facts About the New York Police Department

In his amended complaint, Plaintiff pleads a set of "contextual facts" about the NYPD that he did not raise in his original complaint. Am. Compl. ¶¶ 31–44. The majority of these facts are drawn from an October 1, 2015 report issued by the New York City Department of Investigation's Office of the Inspector General (the "OIG Report," or the "Report"). *Id.* ¶¶ 31–41.[2] Plaintiff highlights a number of facts included in the Report, including that:

- As of the publication of the Report, the NYPD had no definitions for the terms "force" or "excessive force" in its Patrol Guide, *id.* ¶ 32;

- From 2010–2014, the Civilian Complaint Review Board (the "CCRB") received over 10,000 complaints alleging excessive force by the NYPD, *id.* ¶ 33;

- 207 of these complaints were "substantiated" during that time, *id.* ¶ 34;

- In 35.6% of substantiated cases investigated by the OIG, no discipline was imposed on the subject officer, and in 67.4% of substantiated and investigated cases, discipline was either not imposed or reduced from the CCRB's recommendation, *id.* ¶¶ 35–36;

- In half of the substantiated cases that resulted in an arrest, the officer completing the arrest report affirmatively reported that an arrest was not used, *id.* ¶ 39; and

- At the time the Report was issued, it was "impossible to accurately and comprehensively track the use of force by NYPD officers." *Id.* ¶ 41.

In addition to these facts pulled from the OIG Report, the Amended Complaint cites three additional facts from three additional sources. First, citing to a NYPD Misconduct Complaint Database maintained by the American Civil Liberties Union ("ACLU") of New York, Plaintiff notes that 494 substantiated force allegations had been made against active NYPD officers as of April 2021. *Id.* ¶ 42. Second, citing to an additional database, Plaintiff notes that Officer Sclafani is one such active officer with a substantiated force allegation against him. *Id.* ¶ 43. And finally,

---

[2] Plaintiff has incorporated the full OIG Report by reference into his complaint. *See* Am. Compl. ¶ 31 n.1 (citing New York City Department of Investigation, Office of the Inspector General for the NYPD (OIG-NYPD), *Police Use of Force in New York City: Findings and Recommendations on NYPD's Policies and Practices* (2015), https://www.nyc.gov/html/oignypd /assets/downloads/pdf/oig_nypd_use_of_force_report_-_oct_1_2015.pdf.); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (the Court may consider documents incorporated by reference into the complaint).

4

referencing yet another database, Plaintiff notes that 577 excessive force lawsuits were filed against NYPD officers between 2016 and 2020. *Id.* ¶ 44.[3]

### III. LEGAL STANDARD

Under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110–11 (2d Cir. 2010). To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action, devoid of supporting facts, does not suffice. *Id.* To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." Pleadings that

---

[3] Plaintiff has incorporated each of these databases by reference into his complaint. Am. Compl. ¶¶ 42–44 & nn. 2–4. Plaintiff, however, has also attempted to submit an additional declaration and additional attachments through his opposition briefing. Dkt. No. 47. To the extent that those documents are distinct from those incorporated through Plaintiff's complaint, they cannot be considered. *See Chambers*, 282 F.3d at 153 (limiting the documents that a court may consider on a motion to dismiss to the complaint, written instruments attached to the complaint, documents incorporated by reference, or documents integral to the complaint); *In re Agape*, 773 F. Supp. 2d 298, 316 (E.D.N.Y. 2011) ("It is well-settled that a plaintiff cannot amend the complaint through briefs and affidavits, and 'such facts are thus irrelevant for purposes of determining whether [the Plaintiff's] [c]omplaint should be dismissed for failure to state a claim.'" (quoting *Pollio v. MF Global, Ltd.*, 608 F. Supp. 2d 564, 568 n.1 (S.D.N.Y. 2009)). As the Court noted in its prior opinion, "there are rules in litigation, and consequences flow from parties' failure to follow them." Dkt. No. 34 at 22 n.4.

contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79).  Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint."  *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).  A court may also consider "documents attached to the complaint as exhibits, . . . documents incorporated by reference in the complaint . . . [and] document[s] integral to the complaint."  *DiFolco*, 622 F.3d at 111 (internal quotation marks and citation omitted).  In the Rule 12(b)(6) context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits.  The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it."  *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

**IV.    DISCUSSION**

Plaintiff brings two municipal-liability claims against the City under 42 U.S.C. § 1983:  (1) a failure to train claim, Am. Compl. ¶¶ 45–51, and (2) a failure to supervise or discipline claim, *id.* ¶¶ 52–63.  A municipality is not vicariously liable for its employees' actions under Section 1983. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  Municipalities are, however, liable for "their *own* illegal acts."  *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).  Plaintiffs seeking to hold a municipality liable under Section

1983, through what is sometimes called a "*Monell*" claim, must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see Monell*, 436 U.S. at 694 (stating that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury," then "the government as an entity is responsible under § 1983").

The parties dispute only whether Plaintiff has adequately alleged an official policy or custom. *See* Def's Mem. at 3–8; Pl's Opp. at 2–4. "A plaintiff may satisfy [this] prong[ ] in one of four ways: by alleging the existence of (1) a formal policy, (2) action taken or decisions made by policymakers that caused the violation of plaintiff's rights, (3) a practice so persistent and widespread that it constitutes a 'custom or usage,' or (4) a failure to properly train or supervise municipal employees." *Boddie v. City of New York*, No. 15-cv-4275, 2016 WL 1466555, at *2 (S.D.N.Y. Apr. 13, 2016) (quoting *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)).

Here, both of Plaintiff's theories—failure to train and failure to supervise or discipline—fall into the final category. But because Plaintiff has failed to plead facts plausibly suggesting the existence of an official policy or custom through either theory, Defendant's motion to dismiss will be granted.

### A. Failure to Train

Plaintiff has not plausibly stated a failure-to-train claim. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. In order for municipal liability to attach under Section 1983 in this context, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.*

7

(citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "[D]eliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, . . . but the policymaker fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs." *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). In addition, "[t]o allege deliberate indifference in the context of a failure-to-train claim, a plaintiff must plead facts giving rise to a plausible inference that (1) the municipality knows 'to a moral certainty' that its employees will confront a given situation, (2) either the situation presents the employees with a difficult choice of the sort that training will make less difficult, or there is a history of employees mishandling the situation, and (3) the wrong choice by the employee will frequently cause a constitutional deprivation. *Boddie*, 2016 WL 1466555, at *4 (quoting *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

Plaintiff's claim cannot proceed because it relies on the 2015 OIG Report, which does not raise any plausible inferences about the NYPD's training practices at the time of the alleged incident in 2018.[4] For instance, the OIG Report states that, in 2015, the "NYPD training [did] not adequately focus on de-escalation." OIG Report at 4; *see also* Am. Compl. ¶ 32 (noting that the OIG Report "found that the NYPD had no definitions for the terms 'force' or 'excessive force' in its Patrol Guide"). But this and other statements in the OIG Report about the NYPD's practices in 2015 say nothing about whether the NYPD had made changes from 2015 to 2018 to implement changes to address this issue. *See* OIG Report at 4 (suggesting that the NYPD add courses on de-escalation). Put differently, Plaintiff has failed to allege deliberate indifference because, by failing to include any information about the NYPD's training within the three-year window before he was

---

[4] None of the other documents incorporated by reference into Plaintiff's Amended Complaint—the ACLU misconduct database, the database of officers with substantiated force allegations against them, and the database tracking the number of excessive force lawsuits—discuss NYPD training policies; as a result, they cannot support Plaintiff's failure-to-train claim.

arrested, he has not alleged that "the policymaker fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs." *Cash*, 654 F.3d at 334. So Defendant's motion to dismiss will be granted as to Plaintiff's failure-to-train claim.

### B. Failure to Supervise or Discipline

Plaintiff's claim for failure to supervise or discipline will likewise be dismissed. A "'persistent failure to discipline subordinates who violate civil rights' . . . can 'give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*.'" *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 298 (2d Cir. 2020) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). "Such inaction rises to the level of a municipal policy 'where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.'" *Boddie*, 2016 WL 1466555, at *3 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).

Plaintiff's allegations do not satisfy this standard. As an initial matter, several of Plaintiff's statistics from both the OIG Report and other sources concern allegations or complaints made against the NYPD, but do not connect those complaints to disciplinary decisions or a failure to supervise. *See* Am. Compl. ¶ 33 (noting that from 2010 to 2014, there were over 10,000 excessive-force complaints filed with the CCRB); *id.* ¶ 44 (noting that from 2016 to 2020, 557 lawsuits were filed against NYPD officers for excessive force). Numbers of allegations, standing alone, say little about the merits of those allegations. The statistics show that most of the reports of misconduct were not ultimately substantiated. *See Fabian v. City of New York*, No. 16-cv-5296, 2018 WL 2138619, at *7 (S.D.N.Y. May 9, 2018) (noting that the total number of substantiated allegations—207— "represents a mere two percent of the approximately 10,000 complaints of force lodged with the CCRB between 2010 and 2014"); OIG Report at 1 (describing the 207 substantiated allegations of

force as "a notably modest number, given the size of NYPD"). And even statistics about substantiated use of force allegations, decoupled from any assertion of how the NYPD responded to those substantiated cases, cannot speak to (or plausibly allege) any failure to discipline. *See* Am. Compl. ¶ 34 (noting the 207 substantiated use of force allegations in the OIG Report); *id.* ¶ 42 (noting 494 substantiated use of force allegations against current NYPD officers as of April 2021); *see Boddie*, 2016 WL 1466555, at *3 (noting that complaints of excessive force do not plausibly "allege persistent failure to discipline officers for using excessive force during the relevant time period" (internal quotation marks omitted)); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (noting that an inference of indifference arises only where "complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents").

Plaintiff does provide some statistics that connect substantiated force allegations to discipline imposed as a result, but they are likewise insufficient to sustain his failure-to-discipline claim. He notes that, over the period studied in the OIG Report (2010–2014), the NYPD imposed no discipline on officers in 35.6% of cases involving substantiated force allegations, and either imposed no discipline or departed downward from the CCRB's recommendations in 67.4% of such cases. Am. Compl. ¶¶ 35–36. To be sure, these statistics suggest that—as of 2015—there was significant room for improvement in the NYPD's supervision and discipline of officers who used excessive force. But taking the inverse of Plaintiff's cited statistics, they also show that discipline was imposed in 64.4% of substantiated force cases during the 2010–2014 period, and that discipline at or above the CCRB's recommendations was imposed 32.6% of the time. *See also Delorbe-Bell v. City of New York*, No. 15-cv-2344, 2016 WL 1451581, at *3 (S.D.N.Y. Apr. 12, 2016) (noting that the data from the OIG Report "shows that the NYPD imposed discipline in the majority of cases where allegations of excessive force were substantiated," and that in approximately one-third of such cases, the officer received "the most serious disciplinary measure [that] can be filed against an officer").

These statistics, therefore, do not show that the NYPD was "faced with a pattern of misconduct and [did] nothing," as is necessary for disciplinary or supervisory inaction to rise to the level of municipal policy. *Reynolds*, 506 F.3d at 192.

Plaintiff's lead case, *McCants v. City of Newburgh*, No. 14-cv-556, 2014 WL 6645987 (S.D.N.Y. Nov. 21, 2014), is readily distinguishable. *See* Pl's Opp. at 3–4. In *McCants*, Judge Vincent Briccetti declined to dismiss a *Monell* claim where the plaintiff, in addition to alleging that the City failed to monitor or properly train NYPD officers, "detail[ed] seventeen excessive force claims made against the City" prior to the incident in question that were apparently "similar violations" to the ones alleged by the plaintiff in *McCants*. *McCants*, 2014 WL 6645987, at *4 (quoting *Simms v. City of New York*, 480 F. App'x 627, 630 (2d Cir. 2012) (summary order)). Plaintiff's pleadings here, by contrast, point generically to use of force allegations against the City, without connecting any specific allegations (substantiated or not) to his case. *See* Am. Compl. ¶¶ 31–44. So they do not raise the same inference of deliberate indifference that Judge Briccetti found adequate to sustain the claim in *McCants*, or that other judges have similarly found sufficient to state a plausible *Monell* claim. *See Marlin v. City of New York*, No. 15-cv-2235, 2016 WL 4939371, at *20–21 (S.D.N.Y. Sept. 7, 2016) (permitting a *Monell* claim brought by an Occupy Wall Street protestor to proceed, in part because the plaintiff alleged that the NYPD had a pattern of using excessive force "particularly against Occupy Wall Street protestors"); *Osterhoudt v. City of New York*, No. 10-cv-3173, 2012 WL 4481927, at *2 (E.D.N.Y. Sept. 27, 2012) (permitting a *Monell* claim to proceed where the plaintiff connected "his Monell theory with the particulars of his own arrest," and distinguishing dismissed cases where plaintiffs had not done so). Instead, because Plaintiff's claim is supported only by general statistics about the NYPD without connecting those statistics to the specific allegations of excessive force here, it is similar to *Monell* claims that have been dismissed pursuant to Rule 12(b)(6) motions. *See, e.g.*, *Boddie*, 2016 WL 1466555, at *3 (dismissing a failure-to-discipline claim that did not point to

"other similar occasions" in the pleadings); *Delorbe-Bell*, 2016 WL 1451581, at *3 (dismissing a failure-to-discipline claim that relied solely on the OIG Report).

Finally, and perhaps most dispositively, Plaintiff's failure-to-discipline claim cannot proceed because it contains *no* allegations about the NYPD's supervisory or disciplinary practices at the time that he was allegedly assaulted in 2018. Instead, the allegations about failure to discipline come solely from the OIG Report. *See* Am. Compl. ¶¶ 35–36.[5] As discussed above in connection with the failure-to-train claim, that means that the amended complaint has nothing to say about whether the NYPD's practices concerning supervision or discipline changed or improved after the release of the OIG Report in 2015. *Cf. Boddie*, 2016 WL 1466555, at *3 (noting that even for the last two years assessed by the OIG Report, "the number of incidents in which a complaint of excessive force was substantiated and the offending officer was not disciplined was 'trending downward'" (quoting OIG Report at 4)). Put simply, a complaint devoid of allegations about the NYPD's supervisory or disciplinary process when the alleged deprivation of constitutional rights occurred does not show any "inaction" relevant to the *Monell* inquiry—let alone "inaction ris[ing] to the level of a municipal policy" because the government was "faced with a pattern of misconduct and [did] nothing." *Id.* at *3 (quoting *Reynolds*, 506 F.3d at 192). As a result, Defendant's motion to dismiss will be granted as to Plaintiff's second claim also.

### V.     LEAVE TO AMEND

Plaintiff is denied leave to amend is complaint a second time. The decision to grant or deny leave to amend lies within the Court's discretion. *Lobatto v. Berney*, No. 98-cv-1984, 1999 WL 672994, at *10 (S.D.N.Y. Aug. 26, 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Although

---

[5] Plaintiff's facts about the time period in which the alleged assault occurred, by contrast, do not allege anything about supervision or discipline. *See* Am. Compl. ¶ 42 ("As of April of 2021, 494 substantiated force allegations had been found against individuals who remained active NYPD officers."); *id.* ¶ 44 ("From 2016 through 2020, 577 lawsuits were filed against NYPD officers for allegedly using excessive force against civilians.").

12

Fed. R. Civ. P. 15(a)(2) requires the Court to "freely give leave [to amend] when justice so requires," this rule must also "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

In granting the first motion to dismiss, the Court rejected Plaintiff's municipal liability claim as insufficiently pleaded, *see* Dkt. No. 34 at 19–20, and gave Plaintiff the opportunity to amend his complaint to respond to its opinion. But Plaintiff's amended complaint has failed to cure the deficient pleadings. In that circumstance, courts routinely deny leave to amend, and the Court does so here. *See, e.g., Rubenstein v. Knight-Swift Transp. Holdings, Inc.*, No. 19-cv-7802, 2021 WL 3855863, at *4 (S.D.N.Y. Aug. 27, 2021) ("To grant Plaintiffs leave to amend would be allowing them a 'third bite at the apple,' which courts in this district routinely deny." (quoting *Binn v. Bernstein*, No. 19-cv-6122, 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020), *report and recommendation adopted*, 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020)); *Steadman v. Mayo*, No. 09-cv-5154, 2012 WL 1948804, at *6 (S.D.N.Y. Mar. 27, 2012) (denying plaintiff leave to replead and dismissing claims with prejudice where he failed to state adequate factual allegations after the court had dismissed a prior complaint and explained that plaintiff failed to allege adequate facts).

## VI. CONCLUSION

For the reasons outlined above, Defendant's motion to dismiss is GRANTED WITH PREJUDICE.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 43, to enter judgment for Defendant, and to close this case.

SO ORDERED.

Dated: July 11, 2023  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge